# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| BERSCHAUER PHILLIPS CONSTRUCTION COMPANY, a Washington corporation, | ) ) ) ) | No. 68259-8-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| MUTUAL OF ENUMCLAW INSURANCE COMPANY, an insurance company, | ) ) ) ) | ORDER GRANTING MOTION TO PUBLISH |
| Respondent. | ) ) ) | |

Nonparty William Hickman filed a motion to publish the court's opinion filed May 6, 2013. Appellant and Respondent both filed answers. After consideration of the motion and answers, the court has determined that the motion should be granted.

Now therefore, it is hereby

ORDERED that the motion to publish the opinion is granted.

Done this 27th day of June, 2013.

FOR THE PANEL:

_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| BERSCHAUER PHILLIPS CONSTRUCTION COMPANY, a Washington corporation,<br><br>Appellant,<br><br>v.<br><br>MUTUAL OF ENUMCLAW INSURANCE COMPANY, an insurance company,<br><br>Respondent. | No. 68259-8-I<br><br><br><br><br>PUBLISHED OPINION<br><br>FILED: May 6, 2013 |

VERELLEN, J. — Berschauer Phillips Construction Company (BP) appeals from the superior court order granting summary judgment dismissing its "direct action" claim against Mutual of Enumclaw Insurance Company (MOE). BP obtained a default judgment against an insured of MOE, unsuccessfully sought to recover from MOE on a "chose in action" theory in Thurston County, and also filed this direct action lawsuit against MOE in King County. BP assigns error to the superior court's determination that this direct action lawsuit was barred by the claim-splitting doctrine of res judicata. BP could have and should have raised its direct action claim against MOE in its previous lawsuit, which involved the identical subject matter and claim, included the same parties acting in the same capacities, and resulted in a final judgment in favor of MOE. Because

the superior court correctly determined that res judicata barred BP's subsequent lawsuit against MOE, dismissal was proper. We affirm.

## FACTS

In 2002, BP subcontracted with Concrete Sciences Services of Seattle (CSS) to stain concrete floors at Redmond Junior High School. The concrete floor did not properly absorb the stain. At the time, CSS, a Minnesota limited liability corporation (LLC), was insured under a comprehensive general liability insurance policy issued by MOE. In 2003, following completion of the project, CSS filed articles of termination, dissolving the Minnesota LLC.

In 2004, BP filed a lawsuit against CSS in King County seeking to recover damages for defective workmanship. CSS did not appear, and BP obtained a $318,611.97 default judgment. BP informed MOE of the default judgment and demanded payment. MOE moved to vacate the default judgment. The superior court denied the motion as untimely. This court affirmed (Appeal 1).[1]

In 2008, BP filed a lawsuit against MOE in Thurston County, alleging it had "attached all available choses in action" CSS had against MOE.[2] BP asserted claims of negligence, breach of contract, bad faith, and breach of Washington's Consumer Protection Act, ch. 19.86 RCW. In December 2009, BP obtained writs of execution from King County Superior Court, directing the Thurston County sheriff to levy on CSS's

---

[1] Berschauer Phillips Constr. Co. v. Concrete Sci. Servs. of Seattle, LLC, No. 58912-1-I, slip op. at 6 (Wash. Ct. App. July 30, 2007).

[2] Berschauer Phillips Constr. Co. v. Concrete Sci. Servs. of Seattle, LLC, noted at 160 Wn. App. 1039, 2011 WL 1107228, at *1. In fact, BP never fully executed on any of the claims it purported to have attached.

claims against MOE. The King County court granted MOE's motion to quash on the grounds that CSS had no property on which to execute, and any property was not property capable of execution because it was "too uncertain."[3] BP appealed; this court affirmed (Appeal 2).[4]

While Appeal 2 was pending, MOE moved for summary judgment in the Thurston County action. BP moved for a stay. The Thurston County court ordered a stay while awaiting this court's decision in Appeal 2.

MOE then sought discretionary review by this court of the Thurston County court's stay order. This court granted review and determined that: CSS was the real party in interest, not BP; the trial court lacked authority to stay the case; and BP had no standing at the time it filed the action, nor at the time the stay was issued (Appeal 3).[5] The mandate issued August 5, 2011.

---

[3] Id. at 2.

[4] Id. at *3. This court held that the alleged "choses in action" were "anything but certain," as it was not established that "CSS could come into ownership of such claims accruing subsequent to its termination." Id. Accordingly, "it is not clear that CSS owns property upon which BPCC, as CSS's judgment creditor, can execute." Id.

[5] Berschauer Phillips Constr. Co. v. Mutual of Enumclaw Ins. Co., noted at 162 Wn. App. 1029, 2011 WL 2519849, at *3. Although this court also recited that the trial court "lacked subject matter jurisdiction to hear the case," the basis for the opinion was lack of standing. Id. Standing is a common law doctrine that prohibits a litigant from raising another's legal right. Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). We have recently and repeatedly held that a dismissal based on a lack of standing does not deprive a court of subject matter jurisdiction. See, e.g., Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co., No. 67832-9-I, 2013 WL 1164071, at *5 (Wash. Ct. App. Mar. 18, 2013) (standing is not a matter of subject matter jurisdiction); Ullery v. Fulleton, 162 Wn. App. 596, 604-05, 256 P.3d 406, review denied, 173 Wn.2d 1003 (2011) (same).

After the mandate issued, BP and MOE stipulated to an order of dismissal of the Thurston County lawsuit, "with prejudice."[6] The dismissal order states, "[W]ith the dismissal of the claims against Mutual of Enumclaw all claims of all parties in this lawsuit are resolved and this order constitutes final judgment in this matter."[7]

In the meantime, BP filed this new lawsuit against MOE in King County. In the complaint, BP recited that: CSS was insured by MOE; BP had a default judgment against CSS; and BP "has standing to proceed against MOE on a direct action" to collect the judgment.[8] BP asserted that it had recently discovered boilerplate language in MOE insurance policies of the type issued to CSS. According to BP, the CSS policy likely included the provision that "[a] person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial."[9]

MOE moved for summary dismissal, arguing that BP's direct action claims were barred under the doctrines of res judicata and collateral estoppel. The trial court concluded that BP's lawsuit was barred by res judicata, and granted MOE's motion for summary judgment.

BP appeals.

---

[6] Clerk's Papers at 193.

[7] Id.

[8] Clerk's Papers at 2.

[9] Appellant's Br. at 8. BP provided the superior court a copy of an unspecified MOE policy that contained the boilerplate provision.

4

## DISCUSSION

BP asserts that the trial court erred in dismissing its claims, arguing that res judicata does not bar its present lawsuit against MOE. We disagree.

Res judicata is an issue of law, subject to de novo review on appeal.[10] The party raising res judicata must demonstrate that the action involves the same subject matter, cause of action, persons or parties, and quality of persons as a prior adjudication.[11] Res judicata applies both to points upon which the previous court was required to pronounce a judgment, and to every point "which the parties, exercising reasonable diligence, might have brought forward at the time."[12] The public policy favoring prevention of claim splitting applies to a party seeking to recover from an insurer based on various theories of recovery.[13]

Where, as here, the insured has not made an assignment of its claim against its insurer to an injured third party, a third party damaged by actions of the insured has

---

[10] Martin v. Wilbert, 162 Wn. App. 90, 94, 253 P.3d 108, review denied, 173 Wn.2d 1002 (2011).

[11] Williams v. Leone & Keeble, Inc., 171 Wn.2d 726, 730, 254 P.3d 818 (2011). Res judicata also requires that the prior judgment be final. Leija v. Materne Bros., Inc., 34 Wn. App. 825, 827, 664 P.2d 527 (1983). Here, the judgment in the prior Thurston County lawsuit, a dismissal "with prejudice" stipulated by agreement of both parties, was final for purposes of res judicata. Dismissal of an action "with prejudice" is a final judgment on merits of a controversy. Banchero v. City Council of City of Seattle, 2 Wn. App. 519, 525, 468 P.2d 724 (1970).

[12] Sanwick v. Puget Sound Title Ins. Co., 70 Wn.2d 438, 441, 423 P.2d 624 (1967) (internal quotation marks omitted) (quoting Currier v. Perry, 181 Wash. 565, 569, 44 P.2d 184 (1935)).

[13] See Schoeman v. New York Life Ins. Co., 106 Wn.2d 855, 859, 726 P.2d 1 (1986) ("If a matter has been litigated or there has been an opportunity to litigate on the matter in a former action, the party-plaintiff should not be permitted to relitigate that issue.").

options to recover from the insurer.[14] Where the loss is covered by the liability policy, the insurer's most fundamental obligation to its insured is the duty to indemnify the insured by paying the third party.[15]

Understanding BP's theories of liability in each relevant lawsuit is critical to the application of res judicata in this appeal. BP's Thurston County lawsuit was based on its right to execute on its default judgment against CSS by levying on the choses in action held by CSS against MOE. BP contends that its subsequent King County lawsuit was based on its "direct" right to proceed against MOE, premised on a "boilerplate" no-action provision it suspects is in the policy issued by MOE to CSS.[16] The no-action

---

[14] For example, it is well recognized that an injured third party who has obtained a judgment against an insured can execute on that judgment to levy on the choses in action held by the insured against its insurer. See 7A Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE 3D §§ 104:5, at 104-17 (third party may execute on judgment against insured), 104:14, at 104-30 (injured party may execute on insured's cause of action and purchase it at a sheriff's sale).

In most states, including Washington, a third party may proceed directly against the insurer under the state's garnishment statute on the theory that the duty to indemnify is a debt owed by the insurer to its insured. See Atlantic Casualty Ins. Co. v Oregon Mutual Ins. Co., 137 Wn. App. 296, 304-05, 153 P.3d 211 (2007) ("An insurance company's obligation under a liability policy is subject to garnishment. The theory behind this is that as soon as the garnishing creditor established the insured's liability, the insurance company was obligated to pay and, therefore, it is an asset that can be attached in a garnishment action. In the garnishment action, the garnishee insurance company . . . is enitled to raise any defense it had against its policyholder against the garnishing creditor." (citations omitted)); Trinity Universal Ins. Co. v. Willrich, 13 Wn.2d 263, 271, 124 P.2d 950 (1942) ("[I]f [the injured third parties] recover judgment against [the insured], they will have the right to compel [the insurer] to pay that judgment."); Thomas V. Harris, WASHINGTON INSURANCE LAW, THIRD EDITION § 10.01, at 10-1 (2010) ("A garnishment is a derivative process that allows a judgment creditor to collect the judgment by attaching the insurance 'debt' owed by an insurer to its insured.").

[15] In some instances, the circumstances may support additional claims independent of or collateral to the duty to indemnify, such as claims of bad faith or breach of a duty to defend.

[16] A contract provision establishing such a right to sue is generally valid, although some courts hold that such a right exists only if it is clearly expressed in the contract.

provision BP seeks to rely on purportedly states, in relevant part, that "[a] person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial."[17]

BP's efforts to distinguish between the subject matter and cause of action at issue in each of the two relevant lawsuits are not persuasive. Consideration of four factors provide an analytical tool for determining whether two causes of action are identical for purposes of res judicata: "(1) [w]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise

---

See 7A Russ & Segalla, supra, §§ 104:20, 104:21, at 104-40. Washington cases allude to the concept of a "direct action" by the third party against the insured, although some no-action provisions expressly limit the right to situations where the insured has reached an agreed settlement with the injured third party, or the third party has obtained a judgment against the insured after trial on the merits. See Rones v. Safeco Ins. Co. of Am., 60 Wn. App. 496, 502-03, 804 P.2d 649 (1991) (where third-party plaintiff failed to meet the "no action" clause requirements, "the 'no action' clause is a complete defense" against the plaintiff's third-party claim).

On appeal, BP mentions a third-party beneficiary theory, but does not argue that it is a third-party beneficiary and cites no Washington cases adopting this rationale for a "direct action." Courts in other jurisdictions have applied a "third-party beneficiary" label as the basis for a direct action theory. See, e.g., Malmgren v. Sw. Auto. Ins. Co., 201 Cal. 29, 255 P. 512 (1927). Commentators, however, recognize that general and casual use of that label does not reflect a genuine third-party beneficiary contract theory. "The use of the label 'third-party beneficiary' can itself cause confusion, since traditional concepts of third-party beneficiary status include certain distinct rights under the contract. In the direct action context, the label should be restricted to cases where the rights of the beneficiary are limited to the rights of the insured." 7A Russ & Segalla, supra, §104:42, at 104-66.

[17] Appellant's Br. at 8. Even assuming that such a provision exists in CSS's MOE policy, it appears BP has not met the conditions precedent to any "direct" right to action under the provision because the default judgment against CSS was not an agreed settlement or a judgment obtained after an actual trial.

out of the same transactional nucleus of facts."[18] The central issues in both of BP's lawsuits are the same: whether CSS is liable for a loss covered by the MOE policy, and whether MOE had a duty under its policy to indemnify CSS. Both the Thurston County and King County lawsuits depended entirely upon MOE's underlying duty to indemnify CSS. At oral argument, counsel for BP asserted some other duty is owed by the insurer to the third-party claimant. But BP provides no authority for this proposition, and we have found none. Moreover, the evidence necessary to each lawsuit is also the same. In both lawsuits, BP would need evidence that it held a default judgment against CSS, that the MOE policy covered the specific losses, and that CSS met its obligations under the policy.[19] Neither lawsuit is independent of this same nucleus of facts, and the rights at issue in both lawsuits are fundamentally the same.[20]

---

[18] Kuhlman v. Thomas, 78 Wn. App. 115, 122, 897 P.2d 365 (1995) (alteration in original) (internal quotation marks omitted) (quoting Rains v. State, 100 Wn.2d 660, 664, 674 P.2d 165 (1983)). It is not necessary that all four be present to bar the claim. Id. ("there is no specific test for determining identity of causes of action"); Rains, 100 Wn.2d at 663-64; Hadley v. Cowan, 60 Wn. App. 433, 441, 804 P.2d 1271 (1991) ("In determining whether there is identity of causes of action, res judicata, unlike collateral estoppel, applies to what *might* or should have been litigated as well as what was litigated. In Washington a number of tests for the identity of causes of action have been used. . . . '[I]dentity of causes of action cannot be determined precisely by mechanistic application of a simple test.'") (internal quotation marks omitted) (quoting Abramson v. University of Hawaii, 594 F.2d 202, 206 (9th Cir.1979)); see also Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L.REV. 805, 816 (1985) (citing Rains, 100 Wn.2d at 664).

[19] It is true that the Thurston County lawsuit would require proof of the additional fact that BP had executed on the "choses in action" and held the rights of CSS, the insured, to be indemnified on the loss. See generally 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.26, at 527 (2d ed. 2009).

[20] Rights established by a judgment in an action against an insurance company based on a "chose of action" could be destroyed or impaired by a second direct action against the same insurer because both actions depend entirely on the same duty of the insurer to indemnify its insured.

BP concedes that the identical persons or parties were present in both lawsuits, but argues that it was acting in a different capacity or "quality" in the lawsuits. The quality of persons or parties is relevant in situations where the parties to two lawsuits are the same, but one or the other acts in a different capacity in the two proceedings.[21] The circumstances of this case do not support BP's argument that it acted in a different capacity or quality in the two lawsuits. BP acted in its own capacity against MOE and sought to advance and protect its own interests in both lawsuits. These considerations support the application of res judicata in these circumstances.

BP's arguments that application of res judicata results in injustice are not persuasive. BP fails to adequately explain why it could not have discovered the "boilerplate" MOE policy language prior to filing the Thurston County lawsuit by reviewing MOE's standard policies, the same method it used in this case.

Moreover, BP mistakenly contends that this court's determination in a previous appeal (Appeal 2) precluded BP from maintaining a garnishment action against MOE. This court concluded that BP failed to meet its burden of demonstrating that CSS actually had acquired a property interest against MOE, not that CSS's right or interest did not exist.[22] Had BP met its burden by establishing that CSS, a terminated Minnesota LLC, could have come into ownership of a claim against MOE, it could have pursued garnishment or execution on CSS's chose in action.

---

[21] See, e.g., Flessher v. Carstens Packing Co., 96 Wash. 505, 165 Pac. 397 (1917) (father sued as guardian ad litem for his daughter based on injuries to her, and then later sued to recover expenses he incurred providing medical care of the child).

[22] Berschauer Phillips Const. Co. v. Concrete Sci. Servs. of Seattle, LLC, noted at 160 Wn. App. 1039, 2011 WL 1107228, at *3.

Finally, BP asserts that MOE "waived" its ability to assert the defense of res judicata in the King County proceeding because it was aware of the King County lawsuit at the time it stipulated to the dismissal with prejudice of the Thurston County lawsuit. BP relies upon but misreads Karlberg v. Otten.[23] The defense of res judicata can be waived if the defendant is aware of a second suit for the same cause of action and purposefully acquiesces to claim splitting—for example, by failing to raise an objection in either action.[24] Here, on the same day that the Thurston County court entered the stipulated dismissal with prejudice, MOE's counsel advised BP that MOE would file a motion to dismiss the King County action, stating, "I believe the law is clear that BP may not split its claims into multiple lawsuits."[25] MOE did not acquiesce to claim splitting. Karlberg is distinguishable and MOE did not waive the defense of res judicata.

Affirmed.

WE CONCUR:

Cox, J.

Becker, J.

---

[23] 167 Wn. App. 522, 532, 280 P.3d 1123 (2012) (no waiver where "Karlberg's second suit came after judgment was granted in the first cases").

[24] The illustration of waiver in the restatement section cited in Karlberg is where, after a collision, A sues B for personal injuries in one action and for property damage in a second action and "B does not make known in either action his objection (usually called 'other action pending') to A's maintaining two actions on parts of the same claim." RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a), at 235 (1982).

[25] Clerk's Papers at 204.