# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SVETLANA KUDINA, | No. 50333-6-II |
| Appellant, | |
| v. | |
| CITIMORTGAGE, INC., a foreign (non-Washington incorporated) entity; QUALITY LOAN SERVICE CORPORATION, a Washington corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign (non-Washington) incorporated entity; and DOES 1-10, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Svetlana Kudina appeals from a trial court order dismissing her amended complaint based on res judicata. Kudina argues that claims she litigated in a prior federal action differed from claims she raised in the present case. Kudina contends the causes of action differ because they involve different facts and evidence. We affirm.

## FACTS

### I. MORTGAGE LOAN

In April 2008, Kudina obtained a loan of $248,000 from E-Loan, Inc., for the purchase of real property in Vancouver, Washington. Kudina executed a promissory note "to the order of" E-Loan, Inc. that stated E-Loan could transfer the note. Clerk's Papers (CP) at 169. E-Loan

subsequently endorsed the note "to the order of" CitiMortgage, Inc. (CMI), who then endorsed the note in blank.[1]  CP at 171.

Kudina also executed a deed of trust securing the note.  The deed of trust listed E-Loan as the lender, Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee and beneficiary, and First American Title as the trustee.  The deed of trust provided that the note could be sold without notice to Kudina, that successor trustees could be appointed, and that Kudina would be obligated to make payments to a loan servicer in the event of a transfer of the servicing rights.  Additionally, the deed of trust provided that Kudina was required to pay "Escrow Items" like property taxes, as part of her monthly payments.  The deed of trust was recorded with the Clark County Auditor's Office on April 22, 2008.

The first payment letter, signed by Kudina on April 18, 2008, listed Popular Mortgage Servicing, Inc. (Popular) as the loan servicer, and instructed Kudina to make a monthly payment for $1,662.21 by June 1.  The letter contained a breakdown of how the payment would be applied and late fee information.  It informed her that her "total monthly payment may increase or decrease each year due to increases or decreases in annual taxes and/or insurance premiums."  CP at 334.

II.    ASSIGNMENTS AND DEFAULT

Kudina received written notice that the servicing rights on her loan would be transferred to CMI, effective June 1, 2008.

On April 24, 2009, CMI informed Kudina that because of increased property taxes, an escrow item, there would be an increase in her monthly payments.  Kudina asked CMI to cancel

---

[1] The copy of the note Kudina attached to her amended complaint, filed September 9, 2016, in the superior court action reflects these endorsements.  However, the copy of the note attached to a filing by CMI on July 18, 2011, in the prior federal action only shows endorsement from E-Loan to CMI, and not the subsequent blank endorsement by CMI.

her escrow account. CMI refused, and sent Kudina letters on April 24, 2009, and June 12, 2009, notifying her it could not cancel her escrow account and that she must make the increased payments to the escrow account under the terms of the note and deed of trust.

Kudina then "unilaterally decided to begin paying her property taxes and insurance directly to the taxing authority and the insurance company, rather than into an escrow account as required by the terms of her loan documents." CP at 434. Kudina "failed to make full monthly payments on her mortgage" as a result. CP at 132. Between October 21, 2009, and March 4, 2010, CMI sent Kudina four letters notifying her of the default.

On November 17, 2010, MERS assigned and transferred "all beneficial interest" under the deed of trust to CMI. CP at 186. The assignment was recorded in Clark County Auditor's Office on November 30.

III.    FEDERAL LAWSUIT

On December 7, Kudina, a self-represented litigant, filed a complaint against CMI, in the United States District Court for the Western District of Washington. Kudina indicated that the complaint was also being filed against "defendants who are not known . . . but who will be added and/or substituted as named defendants at such time as their true identities are determined." CP at 240.

Kudina alleged that CMI violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692d, because Northwest Trustee Services (Northwest) initiated foreclosure proceedings against the property as successor trustee, and that she was not in default. Kudina alleged that Northwest was an "agent" of CMI. CP at 241. Kudina asked the court for temporary and permanent orders enjoining the foreclosure proceedings, damages, and declaratory relief in the form of an order stating her "monthly mortgage payment amount [was] $1,408.12." CP at 242.

3

A.      First Amended Complaint

On January 11, 2011, Kudina filed an amended complaint against CMI.  This pleading dropped the FDCPA claim, and added a count of fraud and, in the alternative, a count of negligence.  Kudina premised the fraud claim on an allegation that CMI "initiate[d] foreclosure proceedings based on representations that [CMI knew were] false," specifically, that Kudina was in default.  CP at 254.  Kudina premised the negligence claim on CMI's "failure to maintain adequate record keeping policies and manage its accounts caused it to initiate foreclosure proceedings" when she was allegedly not in default.  CP at 255.  Additionally, Kudina sought "declaratory judgment quieting title in ownership and equity" of the property in her favor.  CP at 255.

B.      Cross-Motions for Summary Judgment

In June, Kudina filed a motion for summary judgment.  Kudina stated that the facts demonstrated that she was not in default and that foreclosure proceedings were initiated "based on the false premise that [she was] in default."  CP at 258.  Kudina admitted that she signed the original note and cancelled the escrow account in 2009.  Kudina argued that the terms of her agreement with E-Loan allowed her "to cancel her escrow payments[ ] and make payments for taxes and insurance directly to the taxing authorities and insurance carrier[ ] at any time."  CP at 259.

In July, CMI filed an answer to the amended complaint and a cross-motion for summary judgment.  CMI asserted that Kudina was in default and that records of Kudina's account were accurate.  CMI argued that all of Kudina's claims, and her request for injunctive relief, stemmed from her "unilateral" decision to stop making her full monthly payment by refusing to make the escrow payment as required by the deed of trust.  CP at 286.  Additionally, CMI pointed out that

it never "initiated foreclosure proceedings" against Kudina, and she could not therefore prove damages. CP at 307.

In October, the district court granted CMI's motion for summary judgment and dismissed all claims with prejudice. The district court noted that Kudina was in default for non-payment, despite her allegation that CMI engaged in fraudulent foreclosure. The court noted Kudina's concessions and admission, including that: "she signed the loan documents, . . . received notice of the increase in the escrow payment amount in 2009, . . . unilaterally attempted to cancel the escrow account . . . , and she then stopped paying the full, agreed-upon mortgage payment amount." CP at 437. The court concluded the loan documents were clear, and that Kudina "was aware of the consequences of her unilateral attempt to modify them." CP at 437.

In the same order, the district court denied Kudina's claim for an injunction quieting title. The court concluded that as any irreparable harm resulting from further foreclosure proceedings was "entirely [Kudina's] own fault." CP at 436.

C.      Decision on Appeal

Kudina appealed the decision. On March 18, 2014, the United States Court of Appeals for the Ninth Circuit affirmed. It concluded, "Kudina failed to raise a genuine dispute" as to whether CMI's enforcement efforts "regarding [the] escrow account . . . were fraudulent, negligent, or warranted injunctive relief." CP at 443. The Ninth Circuit also held that "Kudina's contentions regarding . . . the application of the decision in [*Bain*[2] were] unpersuasive." CP at 443.

IV.    APPOINTMENT OF QUALITY LOAN SERVICE AS TRUSTEE

On August 19, 2015, CMI appointed Quality Loan Service (Quality) as successor trustee under the deed of trust. The assignment was recorded in the Clark County Auditor's Office.

---

[2] *Bain v. Metropolitan Mortg. Grp., Inc.*, 175 Wn.2d 83, 285 P.3d 34 (2012).

Quality Loan Service initially scheduled a trustee's sale for August 26, 2016, but CMI and MERS later cancelled the sale.

V.    STATE LAWSUIT

On August 15, 2016, Kudina filed a complaint against CMI, MERS, and Quality in Clark County Superior Court.  She alleged the foreclosure was fraudulent and a product of unfair and deceptive practices under the Consumer Protection Act (CPA), RCW 19.86.020.

The specific allegations stated that the unfair and deceptive conduct involved MERS "falsely representing that it is the 'beneficiary' of the DOT," "illegally attempting to convey the interest in the DOT to [CMI]," and "doing so for purposes of furthering a legally infirm foreclosure."  CP at 14.  Kudina alleged the November 17, 2010 assignment of the beneficial interest under the deed of trust was void because it was allegedly signed by an assistant secretary of MERS.

Kudina alleged one count of fraud against CMI.  She alleged CMI knew it had no legal right or enforceable interest in the note or deed of trust.  She also alleged that CMI intentionally misapplied her payments, and fraudulently stated that her escrow account was in arrears and that she was in default.  She alleged CMI took these actions as a pretext for fraudulently foreclosing on the property.

Kudina sought damages for the Consumer Protection Act (CPA) violation and fraud.  She also sought temporary injunctive relief enjoining the trustee's sale scheduled for August 26 and permanent injunctive relief enjoining all three defendants from foreclosing.  She also sought declaratory judgments that CMI did not own or hold the note, that CMI had no rights under the deed of trust, and that the November 17, 2010 assignment to CMI was null and void.

A.      Motion for Temporary Restraining Order (TRO)

On August 15, Kudina filed a motion for a TRO to enjoin the trustee's sale.  The TRO made substantially the same allegations as the initial complaint.

On August 19, CMI and MERS filed a joint response opposing Kudina's TRO motion. CMI and MERS argued that Kudina's TRO motion was barred by the doctrine of res judicata. They argued that Kudina should have, but did not, claim that the November 17, 2010, assignment of beneficial interest to CMI was invalid, and should have, but did not, name MERS as a defendant in the prior federal case.  The response also argued that Kudina did not make a specific allegation of wrongdoing by Quality.

B.      Amended Complaint

On September 9, Kudina filed an amended complaint without leave or consent of the respondents or the court.  Kudina added allegations to the CPA claim.  Kudina acknowledged that CMI had endorsed the note in blank.  She argued, however, that because the promise to repay the loan was not unconditional, the blank endorsement was void, and transferred no interest to CMI, since the note was not a negotiable instrument.  Kudina did not allege a CPA violation against Quality.

Kudina added claims of fraud against MERS and Quality.  She alleged MERS fraudulently represented that it was a beneficiary transferring beneficial interest to CMI under the deed of trust. Similarly, Kudina alleged Quality fraudulently represented it was a substitute trustee under the deed of trust in the notice of trustee's sale.

Kudina asked the court to enjoin CMI and its agents from selling or conveying the property at any time.  Kudina sought additional declaratory relief.

C.      Motions to Dismiss Complaint

On September 30, Quality filed a motion to dismiss the amended complaint under CR 12(b)(6).  Quality argued that the amended complaint failed to state a claim because CMI was the noteholder.  It argued the note was a negotiable instrument, endorsed to CMI by E-Loan and subsequently endorsed in blank by CMI, and that the amended complaint failed to allege that CMI was not in possession of the note.  Additionally, Quality argued that the deed of trust followed the note, and that assignment of the deed of trust was "not a prerequisite to a nonjudicial foreclosure." CP at 219.  Quality referenced a concurrently filed request that the court take judicial notice of the deed of trust and CMI's appointment of Quality as successor trustee, which provided copies of those documents.[3]

On October 3, CMI and MERS jointly filed a motion to dismiss the amended complaint under CR 12(b)(6) based on res judicata.  They asked the court take judicial notice of the prior federal litigation, and attached copies of the filings and decisions in that case.

Kudina filed a response to CMI and MERS motion to dismiss, and CMI and MERS filed a reply.

D.      Order of Dismissal

On April 21, 2017, the trial court took judicial notice of the prior federal litigation and entered an order granting CMI and MERS' motion to dismiss the amended complaint.  It granted the dismissal because Kudina was "precluded from re-litigating claims that were brought or *could have been brought* in the prior federal litigation."  CP at 536.

---

[3] Kudina never filed a response to this motion to dismiss.

ANALYSIS

I.      CR 12(b)(6)

We review orders for dismissal under CR 12(b)(6) de novo. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). We also review the applicability of res judicata or collateral estoppel de novo. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004); *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 837, 125 P.3d 202 (2005).

Dismissal for failure to state a claim is proper where a complaint is facially deficient due to an "insuperable bar to relief." *Fairfax v. Simpson*, 170 Wn. App. 757, 763, 286 P.3d 55 (2012). Relief is barred where it appears beyond doubt that no set of facts consistent with the complaint would justify recovery. *Tabingo v. Am. Triumph LLC*, 188 Wn.2d 41, 45-46, 391 P.3d 434 (2017), *cert denied*, 138 S. Ct. 648 (2018). "The court must assume the truth of facts alleged in the complaint, as well as hypothetical facts, viewing both in the light most favorable to the nonmoving party." *Didlake v. State*, 186 Wn. App. 417, 422, 345 P.3d 43 (2015).

As a threshold matter, Kudina states the trial court's decision "appears to have been decided on matters outside of the face of the [amended complaint]," including the filings of CMI. Op. Br. of Appellant at 14.

Normally, a trial court must convert a CR 12(b)(6) motion into a motion for summary judgment under CR 56 if it considers matters outside the face of the complaint. *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 844, 347 P.3d 487 (2015).

However, on CR 12(b)(6) motions there are circumstances under which trial courts can consider materials outside the face of the complaint. *Jackson*, 186 Wn. App. at 844. One circumstance includes taking judicial notice of public documents "if the authenticity of those

9

documents cannot be reasonably disputed." *Jackson*, 186 Wn. App. at 844. Additionally, a trial court can consider information outside of the complaint without converting a CR 12(b)(6) motion to a summary judgment motion if the "'basic operative facts are undisputed and the core issue is one of law.'" *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015) (quoting *Ortblad v. State*, 85 Wn.2d 109, 111, 530 P.2d 635 (1975)).

Here, the trial court judge took judicial notice of the prior federal litigation and, presumably, the publicly available filings in that case, which CMI and MERS attached to their CR 12(b)(6) motion. The filings in the prior litigation included attachments of documents that arguably do not fall within any exception to the rule requiring conversion of the CR 12(b)(6) motion. However, the basic operative facts in this case are undisputed, and the core issue, whether res judicata applies, is one of law. As such, the trial court did not err.[4]

II.     RES JUDICATA

Kudina argues that the trial court incorrectly applied res judicata to the claims in her amended complaint. We disagree.

Res judicata bars the relitigation of claims determined by a final judgment, as well as claims the plaintiff could or should have litigated in prior litigation. *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014). The doctrine "prohibits the same parties from litigating a second lawsuit on the same claim or any other claim" arising from the same transaction or series of transactions "that could have been, but was not, raised in the first suit." *Cook v. Brateng*, 180 Wn. App. 368, 373, 321 P.3d 1255 (2014). "A matter should have been raised and decided earlier if it

---

[4] Kudina argues that the trial court did not base the dismissal on CR 12(b)(6) because the order did not dismiss the amended complaint for a lack of merit because it did not state "that there was no set of facts" on which she could recover, or that there was an "insuperable bar to relief." Reply Br. of Appellant at 6, 7. Because we review the dismissal de novo, the superior court's alleged failure to make these statements is of no consequence.

is merely an alternate theory of recovery or an alternate remedy." *Eugster v. Wash. State Bar Ass'n*, 198 Wn. App. 758, 790, 397 P.3d 131, *review denied*, 189 Wn.2d 1018 (2017).

The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). Once this requirement is met, we determine whether subsequent claims are precluded by examining whether the two actions share an "'identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.'" *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 108, 297 P.3d 677 (2013) (quoting *Mellor v. Chamberlin*, 100 Wn.2d 643, 645-46, 673 P.2d 610 (1983)).

A. Final Judgment on the Merits

Kudina properly concedes that the prior federal action was a valid and final judgment on the merits.

A trial court's order granting summary judgment in favor of a defendant and dismissing all claims with prejudice is a final judgment on the merits. *In re Pers. Restraint of Metcalf*, 92 Wn. App. 165, 175 n.6, 963 P.2d 911 (1998).

Here, the district court dismissed Kudina's federal action with prejudice, and the Ninth Circuit affirmed. The district court based the federal judgment on a determination that Kudina was in default for non-payment, despite her allegation that CMI "engaged in a fraudulent foreclosure." CP at 434. The district court also denied Kudina's claim for an "injunction quieting title," concluding that any irreparable harm resulting from further foreclosure proceedings was "entirely [Kudina's] own fault." CP at 435, 436. Likewise, the Ninth Circuit concluded that "Kudina failed to raise a genuine dispute" as to whether CMI's enforcement efforts "regarding [the] escrow account . . . were fraudulent, negligent, or warranted injunctive relief." CP at 443.

11

B.     Claims Arising from the Same Transaction

Kudina argues the trial court improperly dismissed her claims because the prior federal litigation did not involve the same causes of action (factor 2) as the state action. She does not meaningfully argue the other three factors. Respondents argue that the causes of action are identical, as they arise from the same events and transactions.

Kudina's argument is primarily that she "sought different relief under different facts." Br. of Appellant at 15. Kudina contends the federal action sought relief based on the misapplication of Kudina's payments and other escrow issues, and the state action sought relief based on transfers and assignments of rights under the note and deed of trust. Kudina also argues that she raised different allegations and claims in the state action, including the negotiability of the note, and the CPA count, and the fraud claims against MERS and Quality.

In evaluating whether two causes of action are the same, we consider a number of factors including: "'(1) [w]hether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of [operative] facts. *Berschauer Phillips Const. Co. v. Mut. of Enumclaw Ins. Co.*, 175 Wn. App. 222, 230, 308 P.3d 681 (2013) (quoting *Kuhlman v. Thomas*, 78 Wn. App. 115, 122, 897 P.2d 365 (1995)). We have rejected the argument "that a party can bring as many actions as he or she has substantive legal theories, even if all theories involve the same facts, the same evidence, and the same transaction." *Sound Built Homes, Inc. v. Windermere Real Estate/S., Inc.*, 118 Wn. App. 617, 632, 72 P.3d 788 (2003).

For purposes of res judicata, Kudina's causes of action were the same.

12

If Kudina's state claims were allowed to go forward on the merits, CMI's right to foreclose would be destroyed or impaired. The prior lawsuit established CMI's right to foreclose on the property. The Ninth Circuit concluded Kudina did not raise a genuine dispute as to whether the foreclosure proceedings resulted from CMI's allegedly fraudulent representations. It concluded that injunctive relief enjoining the foreclosure sale was not warranted. Kudina now seeks to vitiate CMI's right to foreclose based on alternate theories of recovery, or through alternate remedies, based on the actions or representations of MERS and Quality. Res judicata precludes such claims because Kudina could and should have raised them in the prior federal lawsuit.

Additionally, the same evidence is necessary for each lawsuit. That evidence includes: Kudina's promissory note and deed of trust, the assignments of interests under the deed of trust, and the notices of default and sale. Both the federal and the state cases involve the rights and obligations under the same note and deed of trust, including the right to assign and transfer interest under those documents, and the right foreclose upon default of the borrower. They involved the alleged infringement of Kudina's rights regarding foreclosure of the property.

Lastly, both of Kudina's lawsuits arose out of the same transactional nucleus of operative facts and events. They arose from the 2008 loan transaction between Kudina and the original lender, the assignments of the rights under the note and deed of trust, Kudina's subsequent default, and CMI's enforcement efforts following the default.

We conclude that res judicata applies. The trial court correctly dismissed the amended complaint under CR 12(b)(6) based on the application of res judicata.

III.    COLLATERAL ESTOPPEL

Kudina also assigns error to the misapplication of collateral estoppel by the trial court in dismissing her claims. However, in her reply brief, Kudina states that the trial court "only

13

dismissed the action below on the basis of claim preclusion and *res judicata*." Reply Br. of Appellant at 7. Respondents argue that the trial court did not apply collateral estoppel, and that collateral estoppel does not apply.

Because the respondents do note argue that collateral estoppel applies to preclude Kudina from relitigating issues determined in the prior case, we decline to reach Kudina's collateral estoppel argument.

IV.    ATTORNEY FEES

Kudina asks us to award her attorney fees and costs on appeal should she prevail, based on unspecified provisions in the loan documents related to this appeal. Because she is not the prevailing party, we decline to award Kudina her attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, C.J.

_____
Lee, J.

14