# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JEFFREY HALEY,

        Respondent,

        v.

MJD PROPERTIES, LLC, a
Washington limited liability company;
and JOHN PUGH, an individual,

        Appellants.

No. 84603-5-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — In a lawsuit filed in 2012, Jeffrey Haley asserted a right to control the height of arborvitae trees that form a hedge along a shared property line with his downhill neighbor, MJD, to preserve the view from his uphill property. The trial court resolved this claim against Haley. In a second lawsuit filed almost a decade later, Haley relied on different legal theories to assert the same right to cut or otherwise limit the height of the same trees. We conclude Haley's claim is barred under principles of claim preclusion. The trial court erred in denying MJD summary judgment on Haley's claim for declaratory judgment concerning the arborvitae trees. We reverse and remand with instructions to dismiss this claim.

I

Jeffrey Haley, MJD Properties LLC, and John Pugh own adjacent properties on Mercer Island.[1]  MJD Props., LLC v. Haley, 189 Wn. App. 963, 966, 358 P.3d

---

[1] Some of the background facts are derived from this court's published decision stemming from prior litigation between MJD and Haley.

476 (2015). Haley purchased his property in 2005. Thereafter, Pugh formed MJD and in December 2011, MJD purchased the waterfront lot next to Pugh's own waterfront property. Id. Haley's property sits directly behind and uphill from both waterfront lots. Id.

A few years before Haley purchased his property, the former downhill owners of MJD's waterfront lot, Nancy and Duane Oyler, planted a hedgerow consisting of 22 arborvitae trees along part of the property line between their property and the uphill lot later purchased by Haley. The Oylers did not obtain a survey at the time of planting, but intended to locate the trees on their side of the property line.

By at least the end of 2011, Haley had expressed interest in trimming the height of the arborvitae trees to protect the water view from the second floor of his home. Haley sent the Oylers a letter dated November 28, 2011, outlining his legal reasoning why he was entitled to an "implied easement" to trim the trees, and requested the Oylers sign an express easement to that effect. The Oylers did not respond or grant his request.

After the Oylers sold their lot to MJD, Haley continued his efforts to persuade the new owner to allow Haley to trim the top of the arborvitae trees and/or to grant a view easement over MJD's property. In March 2012, Haley asserted to Pugh a separate easement to park vehicles on parts of MJD's property, which Haley sought to negotiate alongside Haley's asserted "view rights."

On July 10, 2012, MJD filed a lawsuit against Haley, claiming timber trespass for Haley's allegedly having trimmed the height of a weeping European

2

beech tree on MJD's property after the Oylers moved from the property but before they sold it to MJD.  Id.  MJD also made claims about utility lines and sought a declaratory judgment that Haley had no view rights affecting its property.

At successive stages of MJD's 2012 action, Haley asserted counterclaims. Among these claims, Haley asserted "[c]laims for [d]eclaratory [r]elief" that he had "a right to trim trees on Plaintiff's property for view protection."  Haley argued he had a right to trim the height of the arborvitae trees on the property line, an implied easement to do so, and the condition of the arborvitae trees reaching a height that blocked his view constituted a nuisance, an outrage, and intentional infliction of emotional distress.

In support of his claims, Haley argued the home on his property was designed to take advantage of the view with the majority of the living space situated on the second floor.  Haley relied on a purported practice or agreement from the time when all the lots were held by members of the same family under which the owner of Haley's property had permission to trim the height of the arborvitae trees. Haley also claimed to have reached an "accommodation" with the Oylers whereby they allowed him to trim the height of the arborvitae trees to protect his view, but MJD refused to maintain the hedge in a similar manner or allow him to do so.

In the same counterclaims, Haley alleged that a prominent cedar tree that Pugh had planted was a spite structure.  Haley did not allege the arborvitae trees were a spite structure.  Haley sought relief that would allow him to move the

3

arborvitae trees onto his property and cut down those trees which straddled the property line.[2]

In response to Haley's counterclaims, MJD relied on, among other things, testimony by the Oylers disputing Haley's assertion there had been an agreement or practice among the former family owners to protect the uphill owner's view, and denying that they had ever given Haley permission to trim the height of the trees. In successive orders, the superior court dismissed Haley's counterclaims concerning the arborvitae trees for implied easement, nuisance, and outrage. After arbitration among the parties of competing timber trespass claims, and an appeal, both involving issues unrelated to the arborvitae trees, the superior court entered final judgment on MJD's 2012 action on May 1, 2017. Neither party appealed this judgment.

It appears that the seeds of the present dispute were sown when, on September 20, 2020, Haley e-mailed Pugh proposing to replace the arborvitae trees with a seven- or eight-foot-high fence. Pugh would not agree, and Haley and Pugh's current attorney later exchanged further e-mails. In these e-mails, Haley asserted that Pugh's gas line crossed Haley's property without an easement and amounted to a trespass, and Pugh's attorney asserted that Haley's sewer line crossed Pugh's property without an easement and amounted to a trespass, and that Haley was unlawfully discharging water across Pugh's property.[3]

---

[2] Haley's requested relief implicitly would have given him control over the arborvitae trees by moving them onto his property or otherwise felling them.

[3] Pugh's attorney threatened that Haley would have to move his sewer line if he did not agree to Pugh's terms. Haley would later contend that moving his sewer line in the manner Pugh came to demand would cost him $200,000.

On May 13, 2021, Haley filed the present lawsuit against MJD. Haley's complaint alleged that (1) Haley's house was built to take advantage of the downhill view; (2) the Oylers "acquiesce[d]" when Haley had in the past trimmed the height of the arborvitae trees to approximately 14 feet; and (3) Haley had sought but been refused permission from MJD to trim their height in 2013. Haley claimed the arborvitae trees, now grown to an impressive height, deprived his property of light and air.[4] Haley also asserted the trees now collectively amounted to a spite structure and sought declaratory relief that he had the right to maintain them by trimming their height.

MJD answered, and raised, among other things, a defense of claim preclusion as to Haley's claims concerning the arborvitae trees. MJD asserted counterclaims seeking a declaratory judgment that Haley had no right to top, cut, remove, or kill any arborvitae trees. MJD also asserted counterclaims for trespass, declaratory judgment, nuisance, and waste, based on Haley's sewer line and alleged discharge of water onto Pugh's property. Haley counterclaimed further against Pugh personally, for alleged negligence related to Haley's sewer line.

MJD sought summary judgment dismissal of Haley's claims concerning the arborvitae trees, arguing that the claims were barred by claim preclusion and the statute of limitations.[5] MJD also asserted that Haley's requested right to trim the

---

[4] At the time of trial in this matter in May 2022, the arborvitae hedge had reached a height of 23 feet.

[5] MJD asserted below that Haley's claims for declaratory relief concerning the arborvitae trees were governed by either RCW 4.16.080(2) (three-year statute of limitations for claims asserting injury to "person or rights of another") or RCW 4.16.130 (two-year limitations period for actions not covered by other limitations provisions). On appeal, MJD's argument is limited to RCW 4.16.080.

height of the trees was inconsistent with Washington law governing boundary trees. The court granted MJD's summary judgment motion in part, and dismissed Haley's claim that the arborvitae trees were a spite structure under RCW 7.40.030 on the basis of claim preclusion. The court denied summary judgment on Haley's claim for declaratory relief concerning the arborvitae trees.

After the summary judgment hearing, Haley sought and was granted leave to file an amended complaint. Haley somewhat reframed his claim concerning the arborvitae trees, characterizing them as a "common boundary line Hedge" and sought an absolute right to trim the trees to eight feet above grade. The amended complaint states, "Despite a long history of maintaining the Hedge at a height of approximately 14 feet so as not to block light and air from the Haley Property, a practice that predates MJD's ownership of the MJD Property, MJD has made no effort to trim that portion of the Hedge located on the MJD Property and instead has taken extraordinary steps to prevent Haley from trimming the tops of any plants of the Hedge so that it has become overgrown, depriving the Haley Property of light and air." At the same time, Haley added further claims concerning his sewer and storm drainage.[6]

MJD sought summary judgment dismissal of Haley's amended claims concerning the arborvitae trees, again asserting the defense of claim preclusion. The trial court denied the motion, noting that MJD raised claim preclusion in its first motion for summary judgment and there was no basis to reconsider its prior ruling.

---

[6] It appears from the record that during the pendency of the action, Haley made further discoveries concerning drainage from his property and engaged with the City of Mercer Island and Pugh about the necessary drainage measures.

The court held a bench trial over five days. The parties have each elected not to supply this court with a report of proceedings, and do not challenge any of the court's findings based on the evidence at trial. On August 4, 2022, the court entered findings of fact and conclusions of law. Based on the listed witnesses, the court's rulings, as well as the balance of our record, it appears that the evidence at trial focused on the parties' respective sewer line, water discharge, and drainage claims. These claims are not before us and we do not comment on them, other than to observe that the court substantially ruled that Haley's sewer line did not need to be moved, it was not a trespass, the drainage from his property could legally be directed to the portion of Pugh's property over which it had historically discharged to Lake Washington, and Haley failed to prove that Pugh had damaged Haley's sewer line. Apart from recognizing a prescriptive easement for Haley's sewer line to continue to exist apparently where it always had, the court dismissed all claims for affirmative relief with no award of costs or attorney fees to either party.

The superior court's August 4, 2022 rulings disposed of all claims between the parties with the exception of Haley's claim for declaratory relief concerning the arborvitae trees. The trial court concluded the evidence presented at trial was insufficient to adjudicate this claim. The court ordered the parties to obtain an additional survey assessing the position of the arborvitae trees relative to the property line at a height of 4½ feet above the ground. Only MJD offered a new survey. The new survey showed that when measured at the height of 4½ feet, out

of the 22 trees, 4 stood entirely on MJD's property, and the other 18 straddled the property line.[7]

On September 20, 2022, the court entered a "Final Order" concerning the arborvitae trees. On October 19, 2022, the court entered further findings of fact and conclusions of law and final judgment on Haley's claim for declaratory relief concerning the arborvitae trees, generally conforming to the final order. Among other things, the court determined that, under Washington law, the 18 arborvitae trees located on the joint property line were owned by Haley and MJD as tenants in common. Based on this determination, and relying on the conclusion that all 22 arborvitae trees "form a single inseparable common unit barrier," the court entered an order governing their future care and maintenance.

MJD filed a notice of appeal to this court and posted a bond superseding the judgment.

II

MJD makes four assignments of error, all concerning the arborvitae trees.[8] MJD first asserts that the trial court erred in denying summary judgment as to all of Haley's claims relating to the arborvitae trees based on claim preclusion. We agree. Because this issue is dispositive, we do not reach MJD's remaining assignments of error.

---

[7] The ground-level survey had indicated that a single tree, tree "O," stood entirely on Haley's property. However, according to the new survey measuring at 4½ feet above the ground, tree "O" was only 24.0 percent on Haley's property, and was 76.0 percent on MJD's property.

[8] MJD thus abandons any claims of error concerning the parties' respective sewer line, water discharge, and drainage claims.

A

Although Haley suggests that we must review the trial court's ruling on claim preclusion for an abuse of discretion, it is well established that the application of claim preclusion is an issue of law and our review is de novo. Berschauer Phillips Constr. Co. v. Mut. of Enumclaw Ins. Co., 175 Wn. App. 222, 227, 308 P.3d 681 (2013). Claim preclusion, historically known as res judicata, bars not only claims that were raised and litigated, but also claims that could have been raised and litigated in the prior action. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 865, 93 P.3d 108 (2004). For claim preclusion to apply, the prior action must have resulted in a final judgment on the merits, and the prior and subsequent actions must involve the same (1) subject matter, (2) cause of action, (3) persons or parties, and (4) quality of persons for or against whom the decision is made. Williams v. Leone & Keeble, Inc., 171 Wn.2d 726, 730, 254 P.3d 818 (2011).

In its August 2022 ruling, the trial court articulated the following reasons why claim preclusion did not bar Haley's claim for declaratory judgment in the second lawsuit: (1) Haley asserted a claim in equity in the second lawsuit that was not adjudicated in the first lawsuit; (2) the arborvitae trees had grown taller since the first lawsuit was filed; (3) Haley alleged that the trees blocked his view in the first action, whereas in the second lawsuit, he claimed that the trees blocked light and air, and (4) the claims raised in the second lawsuit were not "litigated to their fullest extent" in the earlier case. In the same vein, Haley argues on appeal that claim preclusion did not apply because, although he asserted a "similar right" in the earlier case to cut the arborvitae trees, his claim was based on different legal

9

theories—including implied/prescriptive easement, nuisance and outrage—and because those claims were not "fully litigated" in the first lawsuit. Haley also maintains he was entitled to pursue declaratory relief in the second action because that claim was based on new evidence of MJD's spite and malice and additional recent growth of the hedge.

But, in fact, Haley did seek declaratory relief in the prior action, as he does in this action. And, whether or not claims were previously raised or "litigated to their fullest extent," claim preclusion applies if the claims raised in a subsequent action *could* have been brought and adjudicated in a prior action. Hisle, 151 Wn.2d at 865. To the extent that Haley relied on different underlying legal theories in the two lawsuits, there is no reason that Haley could not have asserted all of his legal claims related to the arborvitae trees in the first lawsuit. See Sound Built Homes, Inc. v. Windermere Real Est./S. Inc., 118 Wn. App. 617, 632, 72 P.3d 788 (2003) (rejecting position that "a party can bring as many actions as he or she has substantive legal theories, even if all theories involve the same facts, the same evidence, and the same transaction").

Contrary to Haley's assertion, his counterclaims related to arborvitae trees in the 2012 proceeding were "fully litigated." The trial court's initial summary judgment order dismissed most of Haley's counterclaims, including his claim of a "right to trim trees" on MJD's property. In a subsequent order, the court specifically dismissed Haley's claim of nuisance based on MJD's refusal to control the height of the arborvitae trees and allowed them to block the views from his second story. The series of orders that culminated in a final judgment in 2017 thus fully resolved

Haley's counterclaims in the 2012 action. That the hedge continued to grow between the first and second lawsuits did not change the underlying factual basis for Haley's claims. In both actions, Haley asserted the same right to trim the height of the arborvitae trees.

B

Turning to the elements of claim preclusion, application of the first, third, and fourth elements is straightforward. The first element, the same subject matter, is met. Haley's claims in both actions involve the same arborvitae trees that form a hedgerow along the boundary line of Haley's and MJD's properties and MJD's refusal to take measures to control their height. And, the persons and parties involved in the 2012 lawsuit and the present lawsuit—Haley, MJD, and Pugh—are the same and appeared in the same capacity in each case.

For the second element, Washington does not employ a specific test to determine the identity of causes of action. Rains v. State, 100 Wn.2d 660, 663-64, 674 P.2d 165 (1983). Our courts use four factors for determining whether two causes of action are identical for purposes of claim preclusion: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. Berschauer, 175 Wn. App. at 230. All four elements need not be present to bar the second action. See Rains, 100 Wn.2d at 664.

The first consideration, impairment of rights or interests, is met. In the present case, Haley sought a ruling that the arborvitae trees constituted a spite structure and a ruling establishing Haley's right to trim the trees, including those located on MJD's property and those on the property line. The final judgment in the first lawsuit extinguished Haley's claim of a legal or equitable right to trim the height of the arborvitae trees, and his claim that MJD had an obligation to maintain the trees at a particular height. Allowing Haley to prosecute those same claims in subsequent litigation against MJD and to seek declaratory judgment to the opposite effect of the prior rulings impaired the rights established by the prior final judgment.

Haley's claims in both cases concerning the arborvitae trees were premised on the same evidence and nucleus of alleged facts. In both cases, Haley alleged that his home was designed to take advantage of views over the downhill waterfront lot, that the Oylers acquiesced to an arrangement whereby Haley was permitted to trim the trees to a height of approximately 14 feet above grade, and that after it purchased the property, MJD refused to honor the prior arrangement by allowing Haley to trim the arborvitae trees or otherwise taking action to reduce the height of the hedge. While Haley maintains that his claim for declaratory relief in this case was based on new evidence of MJD's "spite and malice," he identifies no new evidence or conduct that relates to the arborvitae trees. His consistent allegation in both lawsuits was that after purchasing the property in December 2011, MJD refused to trim the hedge or to allow Haley to perform any maintenance that would affect the height of the trees.

And finally, Haley's claims in both cases involve infringement of the same asserted right to maintain the trees or control their height. This is so even though Haley differently described the alleged harm resulting from the tall hedge in the two cases—before, blocking views, and now, blocking light and air. Both actions (as reflected in the pleadings and declarations) involve the same evidence, the same purported infringement of rights, and the same transactional nucleus of facts. The claims constitute the same cause of action. Claim preclusion is established.

We reverse the trial court's "Final Order" related to arborvitae trees entered on September 20, 2022 and its additional findings of fact and conclusions of law entered on October 28, 2022. We remand for dismissal of Haley's claim for declaratory judgment.

_Birk, J._

WE CONCUR:

_Chung, J._      _Smith, C.J._

13