# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| TED SPICE, an individual, | No.  50915-6-II |
| Appellant, | |
| v. | |
| ESTATE OF DORIS MATHEWS, a Washington Estate; DONNA DUBOIS, as Personal Representative of the Estate; MARK DUBOIS, a purported agent of the Estate; DORIS ELAINE MATHEWS LIVING TRUST, a Washington trust, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Doris Mathews died in 2009.  Doris's daughter, Donna DuBois is the personal representative of Mathews's Estate (the Estate).  Donna is married to Mark DuBois.[1] Ted Spice began litigating against the Estate in 2010, and has raised a multitude of claims against the Estate and the Duboises.  This is the third time we have addressed issues arising from Spice's claims against the Estate.  In this case, Spice appeals several procedural decisions of the superior court.  He also appeals the trial court orders that dismissed his claims against the Estate and the DuBoises, declared Spice to be a vexatious litigant, and awarded the Estate its attorney fees.

---

[1] For clarity, we refer to the DuBoises individually as Donna and Mark.  We intend no disrespect.

The Estate argues that state courts lack jurisdiction, and that Spice's claims are either barred by bankruptcy discharge, laches, res judicata, and collateral estoppel, or are moot.

We hold that (1) state courts have jurisdiction over Spice's claims; (2) the bankruptcy discharge precludes only those claims against Donna and Mark personally that accrued prior to discharge; (3) laches is inapplicable; (4) neither res judicata nor collateral estoppel prevent consideration of Spice's claims; (5) the trial judge did not violate the appearance of fairness doctrine or the Code of Judicial Conduct by refusing to vacate its prior order; (6) Spice's argument regarding his right to disqualify a judge is moot; (7) Spice raised material questions of fact regarding his claims for waste and fraudulent transfers, but not regarding agents acting beyond their authority or fraudulent misrepresentations; and (8) the trial court should reconsider its orders declaring Spice to be a vexatious litigant and awarding the Estate its attorney fees. We do not reach whether the transfer of Estate assets was fraudulent because this issue is inadequately briefed.

Thus, we affirm in part, reverse in part, and remand for further proceedings.

FACTS

I. *SPICE* I[2]

Mathews died in 2009, designating Donna DuBois as her personal representative and sole heir. Probate began in 2010 under Pierce County Superior Court cause number 10-4-00037-5.

---

[2] Facts in this section are derived from *Spice v. DuBois*, No. 44101-2-II, slip op. (Wash. Ct. App. Mar. 1, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2044101-2-II%20Unpublished%20Opinion.pdf (*Spice* I).

Spice, a former business partner of Mathews, brought suit claiming ownership of multiple real properties in Mathews's estate under cause number 10-2-11622-8. Spice and the Estate alleged numerous claims and counterclaims. In 2012, the case proceeded to a jury trial. Instead of rendering special verdicts for each claim and counterclaim, the jury distributed the properties in controversy. The jury allocated ownership of the properties, distributing some properties to the Estate, some properties to Spice, and other properties to both parties jointly with specifically designated percentage ownership. Spice appealed, and in March 2016, we affirmed the trial court's orders. *Spice v. DuBois*, No. 44101-2-II, slip op. at 1 (Wash. Ct. App. Mar. 1, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2044101-2-II%20Unpublished%20Opinion.pdf (*Spice* I).

## II. SPICE'S LITIGATION LEADING UP TO AND INCLUDING *SPICE* II

In December 2012, the trial court granted Spice's motion to appoint a property manager for the shared properties. In June 2013, Spice filed another lawsuit against the Estate for creditor claims under cause number 13-2-09887-9. At some point in 2013 or 2014, a water pipe burst at one of the jointly owned properties.

Spice filed two more lawsuits in May 2014 alleging various nonpayments and breaches by the Estate regarding the shared properties. These cases were assigned cause numbers 14-2-08948-7 and 14-2-08947-9. One suit detailed damage from water leaks at two properties and made claims for the Estate's failure to repair that damage. Spice voluntarily dismissed these lawsuits in March 2015.

In November 2014, Donna, as the personal representative, conveyed certain properties jointly owned by Spice and the Estate to herself personally.

Spice amended his 13-2-09887-9 complaint in December 2014 to allege, among other claims, waste and a breach of fiduciary duty by committing waste with regard to co-owned properties. The waste related claims described water leakage and resulting mold or rot in multiple properties. The amended complaint also alleged that Donna, as personal representative, fraudulently conveyed property to herself personally in November 2014. Spice's 13-2-09887-9 case was eventually consolidated with 10-4-00037-5, the probate proceeding.

The Estate moved for summary judgment dismissal of Spice's claims. In October 2015, the trial court dismissed Spice's claims, ruling that there was no evidence the Estate was managing the property when the alleged waste occurred and that the Estate did not owe fiduciary duties to Spice.[3] Spice appealed.

On December 12, 2017 we issued our opinion on that appeal.[4] (*Spice* II). We held that there was a quasi-fiduciary relationship between Spice and the Estate regarding the properties, and a material question of fact existed as to whether the Estate had breached this duty regarding waste. The record on appeal shows that, as of December 2018, the trial court had not yet resolved the remanded *Spice* II issues.

---

[3] This order granting summary judgment did not mention Donna's alleged fraudulent transfers. At the summary judgment hearing, the trial court stated that it "did not think there was anything to rule on" regarding fraudulent transfers. Clerk's Papers (CP) at 1340.

[4] *Spice v. Estate of Mathews*, No. 48458-7-II, slip op at 1 (Wash. Ct. App. Dec. 12, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2048458-7-II%20Unpublished%20Opinion.pdf.

III. *SPICE* III

This current proceeding is an amalgamation of issues arising from or related to past probate proceedings, separate federal bankruptcy proceedings, and various orders within the probate proceedings of the Estate. It involves the Duboises' personal bankruptcy proceedings, motions regarding Donna's non-intervention powers to sell Estate properties, and Spice's new, amended complaint that was dismissed on summary judgment.

A.      *Duboises' Bankruptcy Proceedings Prior to Oral Argument in this Case*[5]

Donna and Mark filed for chapter 11 bankruptcy in September 2013. In January 2016, their bankruptcy was converted to a chapter 7 proceeding. Donna and Mark created schedules of their assets and liabilities, which included Donna's full or partial interests in the Estate properties. It does not appear, from the portions of the schedules in our record on appeal, that Spice is listed as a creditor of the Duboises. A bankruptcy trustee was appointed to liquidate the Duboises' assets to pay debts. The bankruptcy trustee found potential buyers for properties, including those co-owned with Spice.

The potential buyers for one property were Bryan and Jennifer S. Bartelson. The contract for the sale of the property noted that the sale was contingent on the resolution of the Estate's probate proceedings and the approval of the bankruptcy court.

The bankruptcy court ordered a discharge of Donna's and Mark's debts on May 3, 2016. Then, in January 2017, the bankruptcy trustee filed a complaint against Spice in bankruptcy court

---

[5] The record on appeal lacks numerous documents from the bankruptcy proceedings.

to determine his interests in the properties and to sell those properties in which Spice had an interest.[6]  In response, Spice filed an answer and counterclaims in May 2017.  Spice alleged breach of contract, conversion, unjust enrichment, fraudulent inducement, tortious interference with existing business contracts, tortious interference with existing business relationships, violations of the Consumer Protection Act, embezzlement and alienation of Mathews's property, negligent misrepresentation, breach of fiduciary duty, noncompliance with 11 U.S.C. § 363(h)(4), and violations of the Fraudulent Transfers Act.  Spice's breach of fiduciary claim stated, "Defendants have allowed waste of properties belonging to the Estate."  Clerk's Papers (CP) at 1812.  The bankruptcy trustee moved for summary judgment to determine property interests and to sell certain property.

The bankruptcy court scheduled a status conference for September 2017, noting that "[t]he sales of the properties involved will be held in abeyance until further Order of the Court." CP at 1379-80.  In August 2018, the bankruptcy court denied the trustee's motion for summary judgment.  The bankruptcy court declined to address Spice's counterclaims, stating that "whatever the merits of the waste claims, their need to be resolved is not a detriment to [Spice] that would arise from the sale of his property."  CP at 2033.

---

[6] The complaint also included various mortgage servicers and lienholders of the properties.

B.  *Motions Regarding Donna's Non-Intervention Power*

The Estate moved in superior court to transfer title of the properties to Donna personally, which the court denied in January 2014. The Estate again moved to transfer the Estate property to Donna personally, and the trial court denied the motion in February 2014. Nonetheless, in November 2014, Donna, as personal representative of the Estate, transferred properties to Donna, personally.

In January 2015, the trial court vacated Donna's November 2014 transfers, removed Donna's non-intervention powers, and prohibited further conveyances without court authorization.[7]

On March 12, 2015, Donna again transferred the properties. This time, Donna transferred the properties from herself personally to herself as personal representative of the Estate. Spice alleges he did not discover this transfer until February 2017.

In February 2017, the Estate moved to allow the transfer of Estate assets to Donna personally, and to restore her non-intervention powers. In March, Spice moved to stay proceedings pending the outcome of *Spice* II.

On March 31, 2017, Judge Kirkendoll issued an order that restored Donna's non-intervention powers, allowed the transfer of all the Estate's assets to Donna as an individual, and denied Spice's motion to stay. At the end of the hearing regarding the restoration of Donna's powers, Judge Kirkendoll referred to her judicial assistant as "Ms. Bartelson." Verbatim Reports

---

[7] This order was amended March 2, 2015, to correct a clerical error.

of Proceedings (VRP) (Mar. 31, 2017) at 16. Spice's attorney recognized the last name as someone Spice had been in prior litigation with as a neighboring property owner.[8] In addition, these neighboring property owners, Bryan and Jennifer S. Bartelson, entered into a contract with the DuBoises' bankruptcy trustee to purchase a property co-owned by Spice and the Estate, contingent on the resolution of this probate proceeding and subject to the approval of the bankruptcy court.

Spice, believing that Judge Kirkendoll's judicial assistant was one of the people attempting to purchase his property subject to the probate proceedings, filed a motion for Judge Kirkendoll to recuse herself and to vacate the court order restoring Donna's non-intervention powers and allowing the transfers.

Judge Kirkendoll's judicial assistant submitted a declaration stating that her husband is the brother of Bryan Bartelson, the party adverse to Spice in different litigation. She further stated that neither she nor her husband have social or familial relationships with the other Bartelsons, and she was not personally involved in the Estate proceedings.

Judge Kirkendoll recused herself from this case, but did not vacate her prior order. Spice filed a motion to reconsider Judge Kirkendoll's refusal to vacate the order that allowed the property transfer, which was eventually denied by Judge Ashcraft.

---

[8] *See Spice v. Bartelson*, No. 48075-1-II, slip op. at 1 (Wash. Ct. App. Feb. 7, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2048075-1-II%20Unpublished%20Opinion.pdf. The case involved Bryan and Dorothy Bartelson. Dorothy is captioned in the case as Bryan's wife. Dorothy is actually Bryan's mother, Jennifer Shaw Bartelson is Bryan's wife.

After Judge Kirkendoll's recusal, this case was transferred to Judge Blinn.  On July 14, 2017, before Judge Blinn made any rulings, Spice exercised his statutory right to remove Judge Blinn under former RCW 4.12.050.  The case was then transferred to Judge Cuthbertson.  In August, Judge Cuthbertson sua sponte determined that the removal of Judge Blinn was improper because of Judge Kirkendoll's recusal and sent the case back to Judge Blinn.  However, prior to Judge Blinn making any decisions in the case, Mark, in October, submitted a notice of disqualification of Judge Blinn under RCW 4.12.050.  As a result, the case was transferred to Judge Ashcraft.

B.      *Spice's Present Complaint*

On March 27, 2017, while *Spice* II was pending at this court, Spice filed another suit against the Estate, Donna as the personal representative of the Estate, Mark as a purported agent of the Estate, and the Mathews Living Trust.[9],[10]  This case was assigned cause number 17-2-06511-6.  The trial court consolidated cause number 17-2-06511-6 into number 10-4-0037-5, the original probate proceeding.

Spice amended his complaint in June 2017.  The amended complaint—the one at issue here—alleged fraudulent misrepresentation, fraudulent transfer act violations, agents acting without proper authority, agent acting without bond, failure to provide funds for litigation and

---

[9] Plexus Investments, LLC (a real estate company formed by Mathews and Spice) and Pavel Pasyuk were also parties to the complaint, however, neither are parties to the current claims on appeal.

[10] Mathews had created a trust in 2007, naming herself as the trustee and beneficiary until her death, and Donna as successor trustee, and successor beneficiary.

development costs, waste, and a violation of the Consumer Protection Act. The Estate moved to dismiss this complaint and to enjoin Spice's ability to litigate against the Estate, Donna, and Mark. The trial court treated the filing as a motion for summary judgment dismissal.

Among other claims, the amended complaint alleged waste and lost rent for failure to repair deficiencies with the structural integrity of the properties. It states:

> Since March 2015 the Property Management failed to pay [Spice] any rental income, citing expenses for structural waste totaling at least $55,000.00 committed by the Defendants . . . which further depleted rental income because of inability to rent the affected locations. . . . The waste also caused withdrawal of loan modifications, non-payment of property taxes, and default on mortgages. . . . Waste represents ongoing damages.

CP at 1779. In a declaration filed in response to the motion, Spice attached a variety of documents and reports. One report discusses an insurance claim check from August 2017. This check was payment to repair a rental unit damaged by a fire on one of the shared properties. The report stated that because Donna refused to sign the check, no repairs to the rental unit could proceed.

Further, Spice alleged that he learned about Donna's March 2015 transfers in February 2017. Spice alleged that these transfers were implemented so that Donna could claim them as assets of a trust. Spice claimed that instead of transferring the properties back to the "Estate of Mathews," Donna transferred the properties to herself as the personal representative of the estate.[11] Spice alleged these transfers were fraudulent and impaired his ability to secure financing, and that the Estate had been making fraudulent misrepresentations about the transfers.

_____

[11] Our record includes additional reports from a fraud examiner, but these were submitted to the bankruptcy court in 2018, and were not considered by the trial court on summary judgment.

10

Additionally, Spice identified that the real estate tax affidavits for the March 2015 property transfers were signed by Mark as an agent of the Estate. Spice alleged that Mark had acted without proper authority on behalf of the Estate.

The trial court granted the Estate's motion for summary judgment dismissal regarding some claims on October 27, 2017. The trial court later dismissed the remainder of Spice's claims and declared him a vexatious litigant by letter opinion. The trial court entered an order that dismissed all claims and restricted Spice's access to the court as a result of his vexatious litigation on December 1, 2017. This order dismissing Spice's claims was entered less than two weeks before we decided *Spice* II.

Spice filed a motion for discretionary review of Judge Kirkendoll's decision to voluntarily recuse herself, her denial of Spice's motion to vacate, and Judge Cuthbertson's actions transferring the case. Spice also appeals the orders granting summary judgment dismissal. This court consolidated Spice's motion for discretionary review with his Notice of Appeal for the order granting summary judgment dismissal.

During oral argument in this case, Spice revealed that the bankruptcy court had a hearing scheduled for the following day. The Estate stated that the bankruptcy court's proceeding could affect this case and that we could stay the proceeding pending the bankruptcy court's decision. As a result, we stayed this case pending the bankruptcy court's determination. Order Staying Appeal, *Spice v. Estate of Mathews*, No. 50915-6-II, (Wash. Ct. App. May 20, 2019).

The bankruptcy court ordered the sale of a property co-owned by Spice and the Dubois bankruptcy estate. Final Order and Judgment as to Trustee's Claim under 11 U.S.C. §363(h) for 11003 58th St. Ct. E., *In re Dubois*, No. 13-46104-BDL, (Bankr. W. Wash. June 10, 2019). The bankruptcy court's findings of fact and conclusions of law related to that order state, "This assumes that Mr. Spice actually has a valid claim for waste against the Duboises or the estate, which the Court is by no means convinced of." Findings of Fact and Conclusions of Law, at 13-14; *In re Dubois*, No. 13-46104-BDL, (Bankr. W. Wash. June 10, 2019). In other words, the bankruptcy court left Spice's claims against the Estate to be resolved by the superior court. Following the bankruptcy court's decision, we lifted the stay on this case. Order Lifting Stay, *Spice v. Estate of Mathews*, No. 50915-6-II, (Wash. Ct. App. July 16, 2019).

ANALYSIS

A.    *State Courts Have Jurisdiction To Resolve Spice's Claims*

The Estate argues that state courts do not have jurisdiction because the only proper court for Spice's claims is federal bankruptcy court. We disagree.

When a person files a petition for bankruptcy, their property interests become property of the bankruptcy estate. 11 U.S.C. § 541(a); *see also Merceri v. Deutsche Bank AG*, 2 Wn. App. 2d 143, 147-48, 408 P.3d 1140 (2018). Section 541 of the bankruptcy code broadly defines "property of the [bankruptcy] estate" as "all . . . property, wherever located and by whomever held." 11 U.S.C. § 541(a). Subsection (1) specifies that property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the

case." 11 U.S.C. § 541(a)(1); *In re Estate of Baird*, 131 Wn.2d 514, 519 n.6, 933 P.2d 1031 (1997).

Although federal law determines the debtor's property interests that comprise the property of the bankruptcy estate, the debtor's rights to property are determined by state law. *Northwest Wholesale, Inc. v. Pac Organic Fruit, LCC*, 184 Wn.2d 176, 187, 357 P.3d 650 (2015). As a result, the bankruptcy estate takes the debtor's interest in the property "as defined, determined, and encumbered according to state law." *Northwest Wholesale*, 184 Wn.2d at 188.

Under RCW 11.04.250, the title to real property immediately vests in an heir or devisee upon the death of the grantor, "subject to his or her debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws." "Until an estate is closed, the heirs may not treat estate real property as their own." *In re Estate of Jones*, 152 Wn.2d 1, 14, 93 P.3d 147 (2004). Further, because a property interest is subject to claims against an estate during probate, probate proceedings may alter an heir's interest. RCW 11.04.250; *see In re Peterson's Estate*, 12 Wn.2d 686, 733-35, 123 P.2d 733 (1942).

Following her mother's death in 2009, Donna's property interests as the sole heir of the Estate immediately vested. *See* RCW 11.04.250. As a result, when Donna and Mark filed for bankruptcy, Donna's property interests in the Estate became part of their bankruptcy estate. However, Donna's interest in the Estate property has been, and remains to be, subject to this probate proceeding. Until this probate proceeding is completed, Donna's interest—now her bankruptcy estate's interest—is subject to the outcomes of probate. Only after the probate proceeding closes can Donna's resulting interests be treated as her own. The state probate

proceeding remains separate from the DuBois bankruptcy proceedings. As a result, state courts have jurisdiction to adjudicate probate claims against the Estate.

B.      *Bankruptcy Discharge Does Not Bar Spice's Claims against the Estate, but Does Bar Claims against Donna and Mark Personally for Actions Accruing Prior to Discharge*

The Estate argues that Spice's claims are barred by bankruptcy discharge. We agree in part. We hold that the bankruptcy discharge bars only those claims against Donna and Mark personally that accrued prior to the discharge.

A bankruptcy discharge releases a debtor from liability on debts and enjoins any creditor's effort to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. §§ 727(b), and 524(a)(1)-(2). Section 524(a) provides that a discharge granted in a bankruptcy case

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a). The granting of a discharge is effective immediately upon the entry of an order of discharge. 11 U.S.C. § 727.

However, not all of a debtor's personal liability for debts is dischargeable. 11 U.S.C. § 523. Relevant here, debt is not discharged for property obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523 (a)(2)(A). Under section 523(a), determinations of nondischargeability must be obtained through declaratory judgment, and are the exclusive jurisdiction of the bankruptcy court. FED. RULES BANKR. PROC., 7001(6) and (9);

*In re Franklin*, 179 B.R. 913, 920 (9th Cir. BAP1995). However, we have the power to determine the applicability of a discharge order when discharge is raised as a defense to state law claims filed in state court. *Herring v. Texaco, Inc.*, 161 Wn.2d 189, 195, 164 P.3d 4 (2007).

Here, the bankruptcy estate's interest in the properties cannot be broader than Donna's. *See Northwest Wholesale*, 184 Wn.2d at 188. Because Donna's interest remains subject to the completion of probate, the bankruptcy estate's interest in the properties is also subject to the completion of probate. As a result, Spice's probate claims against the Estate cannot be barred by bankruptcy discharge.[12]

Spice's claims against Donna and Mark personally that were discharged by the bankruptcy court are barred. Namely, Spice's claims against the DuBoises that accrued before the date of discharge, May 3, 2016, are barred.[13] Spice's claims accruing after May 3, 2016 are not barred by the DuBoises' bankruptcy.

C.     *Laches is Inapplicable*

The Estate argues that Spice's claims are barred by laches. Laches is inapplicable here.

Laches is an equitable defense to an action. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 76, 277 P.3d 18 (2012). Laches involves two

---

[12] The Estate argues that Spice agreed to the jurisdiction of the bankruptcy court by filing counterclaims. The Estate does not cite any law to support this contention. Although federal courts may exercise subject matter jurisdiction over state law counterclaims under Title 11, 28 U.S.C. § 157, federal courts may abstain from hearing state law claims related to Title 11. 28 U.S.C. § 1334.

[13] Although Spice alleges fraud, which is an exception to discharge, he does not show he received a declaratory judgment from the bankruptcy court determining nondischargeability.

elements: (1) inexcusable delay in commencing an action and (2) prejudice to the other party because of the delay. *Auto. United Trades Org. v. State*, 175 Wn.2d 537, 542, 286 P.3d 377 (2012). Laches is an extraordinary remedy that generally is not applied when the action is filed within the applicable limitation period. *Harmony at Madrona Park Owners' Ass'n v. Madison Harmony Dev., Inc.*, 143 Wn. App. 345, 362, 177 P.3d 755 (2008).

The party asserting laches has the burden of proof. *Newport Yacht Basin*, 168 Wn. App. at 77. The main component of laches is not the length of the delay, but the resulting prejudice to others. *Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 849, 991 P.2d 1161 (2000). Application of laches requires some change in a party's condition that would make a delay in asserting a claim inequitable. *Newport Yacht Basin*, 168 Wn. App. at 77.

The Estate argues that Spice's claims have drawn out the probate proceedings and that it "has been prejudiced by the delay [because] [p]otential witnesses may have been lost or memories faded." Br. of Resp't at 15. But, the Estate fails to cite any supporting evidence that it has been prejudiced by delay. Because the Estate has the burden to prove laches, and because it has not shown prejudice, laches is inapplicable here.

D.    *Prior Litigation Has No Preclusive Effect*

The Estate argues that Spice's claims of waste and fraudulent transfers or misrepresentations are barred by res judicata and collateral estoppel. Specifically, the Estate argues that Spice's claims relating to fraudulent transfers or misrepresentations were dismissed by *Spice* II. The Estate further argues that Spice brought waste claims in *Spice* I, *Spice* II, and a lawsuit he voluntarily dismissed. The Estate argues that the waste claims here do not contain

16

new evidence of waste, and, as a result, should not be considered. Because Spice's claims are based on a different property transfer, and because separate allegations could support Spice's waste claims, we hold that neither res judicata nor collateral estoppel preclude Spice's claims.

Collateral estoppel and res judicata are distinct but closely related doctrines. *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987). Res judicata bars the relitigation of *claims* that were or might have been raised in a prior adjudication. *Lenzi v. Redland Ins. Co.*, 140 Wn.2d 267, 280, 996 P.2d 603 (2000). In contrast, collateral estoppel precludes the relitigation of *issues* that were previously litigated and necessarily decided in a prior adjudication. *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wn.2d 768, 792, 193 P.3d 1077 (2008). Whether collateral estoppel or res judicata precludes relitigation of issues or claims is a question of law reviewed de novo. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004); *Berschauer Phillips Const. Co. v. Mut. of Enumclaw Ins. Co.*, 175 Wn. App. 222, 227, 308 P.3d 681 (2013).

1.      *Res Judicata Does Not Preclude Consideration*

Res judicata, or claim preclusion, is an affirmative defense that bars relitigation of claims that were litigated, or could have been litigated, in a prior action. *Lenzi*, 140 Wn.2d at 280. The purpose of the doctrine is "to prevent piecemeal litigation and ensure the finality of judgments." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005).

For res judicata to apply, there must have been a final judgment on the merits in a prior action. *Pederson v. Potter*, 103 Wn. App. 62, 67, 11 P.3d 833 (2000). The subsequent action must be identical with the first action with respect to "(1) persons and parties, (2) cause of action,

17

(3) subject matter, and (4) the quality of the persons for or against whom the claim is made."
*Spokane Research & Def. Fund*, 155 Wn.2d at 99. For causes of action to be identical, they must arise from the same transactional nucleus of facts. *Ensley v. Pitcher*, 152 Wn. App. 891, 903-04, 222 P.3d 99 (2009).

Here, Spice's claims arise from different transactional nuclei of facts. Spice alleged distinct fraudulent misrepresentations and transfers from March 2015 that he claims to have discovered in February 2017. He first pled this claim after the trial court in *Spice* II dismissed summary judgment claims in October 2015. Further, the nuclei of facts for the waste claims are different. Spice alleged continuing waste regarding property deficiencies and cited a specific incident to support his waste claim from August 2017. Because these claims arise from different nuclei of facts and are separate causes of action, res judicata does not preclude their consideration.

2.      *Collateral Estoppel Does Not Preclude Consideration*

Collateral estoppel prevents relitigation of an issue even when a different claim or cause of action is asserted. *Christensen*, 152 Wn.2d at 306. The doctrine promotes judicial economy and serves to prevent inconvenience or harassment of parties. *Christensen*, 152 Wn.2d at 306. Collateral estoppel may be applied to preclude only those issues that have been actually litigated and necessarily and finally determined in the earlier proceeding. *Christensen*, 152 Wn.2d at 307. The party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Christensen*, 152 Wn.2d at 307.

The party asserting collateral estoppel must show (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was the party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Christensen*, 152 Wn.2d at 307.

Here, the alleged fraudulent transfers of March 2015 and misrepresentations have not been necessarily and finally determined by a prior proceeding. Spice has not previously pled a fraudulent transfer or misrepresentation claim for the March 2015 transfers. Accordingly, collateral estoppel cannot prevent litigation of these issues because they have never been asserted.

Regarding Spice's claim of waste from *Spice* II, these issues have yet to be finally determined because this court reversed the trial court and remanded these issues for further consideration. Additionally, Spice pled new issues of waste that are not identical to his prior waste claims. Spice's claims for continuing waste regarding property deficiencies and incidents of waste in 2017 show these issues are not identical to those in prior proceedings. Last, the bankruptcy court did not decide any of Spice's counterclaims against the Dubois bankruptcy estate. *In re Dubois*, No. 13-46104-BDL, (Bankr. W. Wash. June 10, 2019). Accordingly, we hold that collateral estoppel does not preclude Spice's claims.

II. RECUSAL OF JUDGE KIRKENDOLL AND RESULTING CASE TRANSFERS

Spice argues that, because she violated the appearance of fairness doctrine and the Code of Judicial Conduct, Judge Kirkendoll should have vacated her order that reinstated Donna's non-intervention powers, disallowed the transfer of the real estate, and granted his motion to stay. Spice also argues that he was deprived of his statutory right to disqualify Judge Blinn under former RCW 4.12.050. The Estate argues that all these issues are moot. We hold that Judge Kirkendoll did not violate either the appearance of fairness doctrine or the Code of Judicial Conduct, and that issues regarding Spice's right to disqualify Judge Blinn are moot.

A.      *Judge Kirkendoll Did Not Violate Either the Appearance of Fairness Doctrine or the Code of Judicial Conduct*

A judicial proceeding satisfies the appearance of fairness doctrine only if a reasonably prudent, disinterested person would conclude that the parties received a fair, impartial, and neutral hearing. *Neravetla v. Dep't of Health*, 198 Wn. App. 647, 670, 394 P.3d 1028 (2017). Under this doctrine, a judge must be impartial both in fact and in appearance. *Neravetla*, 198 Wn. App. at 670. A judge is presumed to perform her functions regularly and properly without prejudice or bias. *In re Estate of Hayes*, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015). "The test for determining whether a judge's impartiality might reasonably be questioned is an objective one that assumes the reasonable person knows and understands all the relevant facts." *Hayes*, 185 Wn. App. at 607.

The party asserting a violation of the appearance of fairness doctrine must show evidence of a judge's actual or potential bias. *Neravetla*, 198 Wn. App. at 670. Although the asserting party need only show evidence of potential bias, that party must produce sufficient evidence of

actual or potential bias, such as a judge's personal or pecuniary interest. *Kok v. Tacoma Sch. Dist. No. 10*, 179 Wn. App. 10, 24, 317 P.3d 481 (2013).

The Code of Judicial Conduct requires that a judge disqualify herself from presiding over a proceeding if the judge, her spouse, or a person within a third degree relationship is a party to, or has more than a de minimis interest in the outcome of the present proceeding. CJC 2.11. A judge shall require her judicial staff members to act with fidelity and in a manner consistent with the judge's obligations under the CJC. CJC 2.12(A).

Here, a reasonably prudent person would conclude that Spice obtained a fair hearing. Spice failed to present any evidence that Judge Kirkendoll was biased, appeared biased against him, or had a personal or pecuniary interest in the proceeding. Rather, Spice contends only that Judge Kirkendoll's staff member, Jennifer N. Bartelson, and her relationship to Spice's adversary in a different proceeding is grounds for Judge Kirkendoll's disqualification.

Spice cites CJC 2.12(A) to argue that a judge's staff member's familial connection should be treated the same as a judge's for purposes of automatic disqualification.[14] However, although that cannon requires staff to act with fidelity and in a diligent manner, Spice does not point to any law that imputes a judicial staff member's third degree relationship conflicts to a judge. Moreover, as soon as Judge Kirkendoll was apprised of her staff's connection to Spice's cases, she immediately recused herself. Because Spice cannot show that Judge Kirkendoll's

---

[14] CJC 2.12(A) states: "A judge shall require court staff, court officials, and others subject to the judge's direction and control to act with fidelity and in a diligent manner consistent with the judge's obligations under this Code."

impartiality could reasonably be questioned, and because Judge Kirkendoll did not violate CJC 2.12(A), his argument fails.

On appeal, Spice argues only that his motion to vacate should have been granted because of the trial court's violation of the CJC. Because the trial court did not violate the Code of Judicial Conduct or violate the appearance of fairness doctrine, it did not err in denying Spice's motion to vacate.

B.  *Spice's Argument Regarding the Disqualification of Judge Blinn is Moot*

Spice argues that the transfer of his cases from Judge Cuthbertson to Judge Blinn was impermissible. We hold that Spice's argument is moot.

"A case is technically moot if the court can no longer provide effective relief." *Randy Reynolds & Assoc. v. Harmon*, 193 Wn.2d 143, 152, 437 P.3d 677 (2019) (internal quotation marks omitted). Although a case may be moot, we may decide an issue if there is a question of continuing and substantial public interest. *Reynolds*, 193 Wn.2d at 152.

Here, the remedy Spice sought by exercising his statutory right was to prevent Judge Blinn from hearing the case. This outcome was achieved. The case was transferred to Judge Ashcraft prior to Judge Blinn making any rulings. This court cannot provide Spice effective relief. Further, Spice makes no attempt to argue that this is an issue of continuing and substantial public interest. Consequently, the issue is moot, and we do not address the argument.

III.  ASSET TRANSFER FROM ESTATE TO DONNA

Spice argues that the Estate should not have been permitted to transfer its assets to Donna. Specifically, Spice argues that because the Estate's motion for the transfer was

predicated on the notion that no claims against the estate remained, the "order requires review, as the effects are devastating to Spice." Br. of Appellant at 31.

Spice does not provide any legal authority that such transfer was impermissible here. Spice merely states that because this court in *Spice* II determined there was a question of material fact regarding the breach of fiduciary duty for waste, this court must review the transfer. Spice also misstates the Estate's motion, which acknowledged the pendency of the *Spice* II appeal, and requested the transfer regardless of that fact. Where counsel does not cite authority in support of a proposition, this court is not required to search out authority, but may assume that counsel, after a diligent search, has not found any. *Gosney v. Fireman's Fund Ins. Co.*, 3 Wn. App. 2d 828, 872, 419 P.3d 447 (2018). Here, Spice does not identify any reason why the trial court should not have granted the motion to transfer assets. Accordingly, we do not address this argument.

IV. SUMMARY JUDGMENT DISMISSAL OF SPICE'S CLAIMS

Spice argues that the trial court erred when it dismissed his claims on summary judgment. Specifically, Spice contends that he raised questions of material fact as to his claims for waste, Donna's and Mark's actions beyond their authority, and fraudulent transfers and misrepresentations. We agree in part, and hold that Spice raised material questions of fact regarding his claims for waste and fraudulent transfers. However, the trial court did not err when it dismissed claims involving agents acting beyond their authority and fraudulent misrepresentations.

A.      *Summary Judgment Legal Principles*

This court reviews summary judgment decisions de novo and performs the same inquiry as the trial court. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). The evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends. *In re Estate of Black*, 153 Wn.2d 152, 160, 102 P.3d 796 (2004).

A defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case, and (2) the plaintiff fails to come forward with evidence creating a genuine issue of material fact on an element essential to the plaintiff's case. *Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey PC*, 180 Wn. App. 689, 699, 324 P.3d 743 (2014). If a defendant satisfies the initial burden of establishing the absence of a material fact, the inquiry then shifts to the plaintiff. *Burton v. Twin Commander Aircraft LLC*, 171 Wn.2d 204, 222-23, 254 P.3d 778 (2011). If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, then summary judgment is proper. *Burton*, 171 Wn.2d at 223.

Mere allegations, argumentative assertions, conclusive statements, or speculation do not raise issues of material fact sufficient to preclude a grant of summary judgment. *Spradlin Rock Products, Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 654, 266

P.3d 229 (2011). Where reasonable minds could reach but one conclusion from the admissible facts, summary judgment should be granted. *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 12 n.2, 98 P.3d 491 (2004). We may affirm summary judgment on any ground supported by the record. *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 700, 395 P.3d 1059 (2017).

B.      *Spice Raised a Material Question of Fact Regarding Waste*

Spice argues that the Estate committed waste on the shared properties. We hold that there is a material question of fact regarding Spice's claim for waste against the Estate.

In real property law, waste is "an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession which results in its substantial injury." *Graffell v. Honeysuckle*, 30 Wn.2d 390, 398, 191 P.2d 858 (1948). Tenants-in-common may be liable to each other for waste. RCW 64.12.020.

This court previously held in *Spice* II that Spice and the Estate were in a quasi-fiduciary relationship. Further, this court held that there were issues of material fact that precluded dismissal of Spice's waste claim. These claims are still outstanding.

Here, Spice alleged that the Estate continued to commit waste on properties they co-own. Specifically, Spice alleged waste that occurred after the *Spice* II trial court dismissed Spice's claims, thus, this complaint alleged new facts to support a new claim of waste. Spice alleged continuing waste resulting in lost rents and property deficiencies. Spice's declaration in opposition to the Estate's motion for summary judgment contains an accounting report that notes a fire at a property left rental units uninhabitable. Further, Spice submitted evidence that Donna

refused to sign a fire-damage insurance check, so funds from that check were unavailable to make the property's rental units rentable. This issue regarding the insurance check allegedly occurred in August 2017 and is discussed in one of Spice's expert's reports. Because Spice raised material questions of fact, we hold that the trial court improperly dismissed Spice's waste claim at summary judgment.

C.    *Spice's Claims Regarding the Actions Donna and Mark as Agents of the Estate Are Barred by the Bankruptcy Discharge*

Spice argues that Donna and Mark breached their fiduciary duties as personal representative and "agent" of the Estate respectively by acting beyond their authority. Specifically, Spice argues that Mark signed real estate tax affidavits purporting to be an agent of the Estate and that Donna's March 2015 transfers were done in violation of a court order. He argues that Donna and Mark should be personally liable for their alleged breaches. We hold that these claims are barred by the DuBoises's bankruptcy discharge.

Spice alleged that Donna exercised non-intervention powers during a period when her powers were suspended by the trial court and Mark purported to be an agent of the Estate. To support his claims, Spice relies on copies of the March 2015 transfers that occurred prior to the reinstatement of Donna's non-intervention powers and copies of real estate tax affidavits where Mark purports to be an agent of the Estate from March 2015. Because Spice's claims attempting to hold Donna and Mark personally liable accrued prior to their 2016 bankruptcy discharge, we hold that Spice's claims are barred.

D.     *Spice Raised a Material Question of Fact Regarding Fraudulent Transfers, but not Regarding Fraudulent Misrepresentations*

Spice argues that Donna fraudulently transferred properties in March 2015 and made fraudulent representations springing from that transfer. We hold that Spice's fraudulent transfers claim survives summary judgment, but that his fraudulent misrepresentation claim does not.

1.     *Fraudulent Transfers*

Under RCW 19.40.041(1)(a), a transfer made by a debtor is fraudulent to a creditor, if the property was transferred:

> (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (b) [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond the debtor's ability to pay as they became due.

RCW 19.40.041(a).

"[A] fraudulent transfer occurs where one entity transfers an asset to another entity, with the effect of placing the asset out of the reach of a creditor, with either the intent to delay or hinder the creditor or with the effect of insolvency on the part of the transferring entity." *Thompson v. Hanson*, 168 Wn.2d 738, 744, 239 P.3d 537 (2009). Any party making a claim under chapter 19.40 RCW carries the burden of proving that the transfer in question was fraudulent. *Sedwick v. Gwinn*, 73 Wn. App. 879, 885, 873 P.2d 528 (1994). Proof of actual intent to defraud must be clear and satisfactory. *Clearwater v. Skyline Constr. Co., Inc.*, 67 Wn. App. 305, 321, 835 P.2d 257 (1992).

Here, two transfer events occurred. In November 2014, Donna transferred properties from the Estate to herself personally. In December 2014, Spice complained of this transfer in his *Spice* II amended complaint.

In March 2015, the trial court vacated these November 2014 transfers. Shortly thereafter on March 12, 2015, Donna attempted to transfer the property once more. This time, Donna transferred the property from herself personally to herself as the personal representative of the Estate. Spice alleges that this second transfer was a fraudulent transfer and, as a result, Donna fraudulently misrepresented the ownership of the property from March 2015 until Spice's discovery of the transfers in February 2017. It is the March 2015 transfer that Spice complains of in this current case.

Spice alleges that Donna's March 2015 transfers were fraudulent because they did not properly return title to the Estate to reflect his percentage of ownership in the properties, and instead impaired Spice's ability to secure financing. Spice argues that the Estate continued to engage in a pattern of deceptive behaviors to avoid his claims. Donna's previous contravention of a court order preventing transfers raises a question of fact regarding Donna's intent to defraud. In its briefing to the trial court and to this court, the Estate addresses only the November 2014 transfers, not the March 2015 transfers. The Estate fails to refute that Donna's subsequent transfers could have been a potential violation of the court order. Because the Estate failed to controvert Spice's evidence, we hold that, taken in a light most favorable to Spice, a material issue of fact exists regarding the fraudulent transfer claim.

2.      *Fraudulent Misrepresentations*

To make a claim for common law fraud, a plaintiff must show proof of all nine essential

elements of the claim:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the
> speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by
> the person to whom it is made, (6) ignorance of the falsity on the part of the person
> to whom the representation is addressed, (7) the latter's reliance on the truth of the
> representation, (8) the right to rely upon it, and (9) consequent damage.

*Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012).  Each element

must be proven by clear, cogent, and convincing evidence.  *Elcon Constr.*, 174 Wn.2d at 166.  A

claim of fraud fails in the absence of any one of the nine elements.  *Frontier Bank v. Bingo Invs.,*

*LLC*, 191 Wn. App. 43, 59, 361 P.3d 230 (2015).

Reliance on a fraudulent misrepresentation must be reasonable under the circumstances.

*Williams v. Joslin*, 65 Wn.2d 696, 698, 399 P.2d 308 (1965).  Whether reliance is reasonable is

normally a question of fact, but "where the court finds that no rational person could find the

plaintiff reasonably relied on the defendant's representation, the trial court can decide that

question as a matter of law."  *Hawkins v. Empres Healthcare Mgmt.*, 193 Wn. App. 84, 100, 371

P.3d 84 (2016).

Here, Spice argues that Donna and Mark intentionally and repeatedly made false

representations regarding the property transfers.  Spice fails to identify evidence of Donna's or

Mark's misrepresentations regarding the transfers.  He does not present any representations for

us to analyze as fraudulent.  Mere allegations, argumentative assertions, conclusive statements,

or speculation do not raise issues of material fact sufficient to preclude a grant of summary

judgment. *Spradlin Rock Products*, 164 Wn. App. at 654. As a result, we hold that the trial court did not err when it summarily dismissed Spice's claims regarding fraudulent misrepresentation.

## V. RESTRICTIONS ON SPICE AS A VEXATIOUS LITIGANT

Spice argues that the trial court erred when it determined that he was a vexatious litigant and enjoined him from further litigation against the Estate without prior approval. We direct the trial court to reconsider this ruling in light of *Spice* II and this opinion.

Under RCW 2.28.010(3), a trial court has the power to provide for the orderly conduct of proceedings before it. As a result, a court may "place reasonable restrictions on any litigant who abuses the judicial process." *Yurtis v. Phipps*, 143 Wn. App. 680, 693, 181 P.3d 849 (2008). Upon a "'specific and detailed showing of a pattern of abusive and frivolous litigation,'" a trial court may enjoin a party from engaging in litigation. *Yurtis*, 143 Wn. App. at 693 (quoting *Whatcom Count v. Kane*, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981)). Proof of mere litigiousness is insufficient to warrant limiting a party's access to the court. *Yurtis*, 143 Wn. App. at 693. Although trial courts may place reasonable restrictions on litigants who abuse the judicial process, courts must be careful not to issue a more comprehensive injunction than necessary. *Yurtis*, 143 Wn. App. at 693. This court reviews a trial court's order limiting a litigant's access to the court for an abuse of discretion. *Bay v. Jensen*, 147 Wn. App. 641, 657, 196 P.3d 753 (2008).

Here, the trial court found that Spice engaged in a pattern of abuse and frivolous litigation. It found that Spice continued to assert the same claims and causes of actions, did not

act in good faith, and ignored the bankruptcy discharge. However, when the trial court

determined that Spice was a vexatious litigant, it was not in possession of this court's decision

that reversed summary judgment as to waste in *Spice* II. That opinion was issued about two

weeks after the trial court's determination. Moreover, we reverse some summary judgment

dismissals in this current case.

Spice's litigiousness alone cannot warrant a limitation on his access to the courts. *See*

*Yurtis*, 143 Wn. App. at 693. However, Spice's litigation strategies, including numerous,

repetitive complaints, some voluntarily dismissed, may be viewed as a pattern of abusive and

frivolous litigation. Because the circumstances surrounding the trial court's ruling have changed,

the trial court should be given an opportunity to reconsider its decision in light of *Spice* II and

this decision.[15]

## VI. ATTORNEY FEES AT THE TRIAL COURT

Spice argues that the trial court abused its discretion when it awarded the Estate its

attorney fees and costs from litigating the summary judgment dismissal. We direct the trial court

to reconsider attorney fees in light of *Spice* II and this opinion.

RCW 11.96A.150(1) states that a trial court, in its discretion, may award attorney fees to

any party "in such amount and in such manner as the court determines to be equitable" based on

"any and all factors that it deems to be relevant and appropriate." This statute gives the trial

---

[15] Spice also contends that the trial court impermissibly restricted his access to federal courts with the broad language it used to restrict his access to the courts. Because we hold that the trial court must reconsider its determination of Spice as a vexatious litigant, we do not address Spice's access to federal courts argument.

court broad discretion regarding the award of attorney fees in relation to the resolution of trust and estate disputes. *In re Estate of Mower*, 193 Wn. App. 706, 727, 374 P.3d 180 (2016). This court reviews a trial court's decision whether to award attorney fees under RCW 11.96A.150 for an abuse of discretion. *Estate of Mower*, 193 Wn. App. at 727.

Here, the trial court granted attorney fees and costs to the Estate regarding the motion for summary judgment dismissal. Again, the trial court's order preceded our decision in *Spice* II. Because the trial court was not in possession of all the relevant facts when awarding attorney fees to the Estate, we hold that the trial court must reconsider its attorney fees determination in light of *Spice* II and this decision.

## VII. ATTORNEY FEES ON APPEAL

Both the Estate and Spice request attorney fees under RAP 18.1 and RCW 11.96A.150. Further, Spice requests costs under RAP 14.2 as the prevailing party on appeal. We decline to award attorney fees to either party.

## CONCLUSION

In conclusion, we hold that state courts have jurisdiction over this case, the bankruptcy discharge precludes only Spice's claims against Donna and Mark personally that accrued prior to discharge, laches is inapplicable, and neither res judicata nor collateral estoppel prevent consideration of Spice's claims.

Further, we hold that Judge Kirkendoll did not violate the appearance of fairness by denying Spice's motion to vacate her prior order, and that Spice's argument regarding his right to disqualify a judge is moot. We do not reach whether the transfer of Estate assets was proper.

32

No. 50915-6-II

We hold that Spice raises material questions of fact regarding his claims for waste and fraudulent transfers. However, he does not raise material questions of fact regarding agents acting beyond their authority and fraudulent misrepresentations. Finally, we require the trial court to reconsider its rulings that declared Spice to be a vexatious litigant and awarding the Estate its attorney fees.

We affirm in part, reverse in part, and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Glasgow, J.

Cruser, J.